(No. 3826—)

LOTTIE TYNER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed January 9, 1945.*

KUHNS AND HIGGINS, for claimant.

GEORGE F. BARRETT, Attorney General; WILLIAM L. MORGAN, Assistant Attorney General, for respondent.

ECKERT, J.

On January 11, 1943, claimant, Lottie Tyner, an employee of the Department of Public Welfare of the State of Illinois, while serving as an attendant at the Elgin State Hospital, tripped and fell, suffering a fracture of the left humerus. The accident occurred while claimant was preparing to help a patient clean the emergency room at the hospital. A physician was called; claimant's arm was x-rayed, and claimant was put to bed at the hospital where she remained until January 13, 1943.

Claimant was then taken to the Illinois Research Hospital in Chicago and her arm was put in a cast. She returned to the Elgin State Hospital, where she remained until January 22, 1943. At the suggestion of Dr. Reed, managing director of the hospital, she then returned to Chicago and employed Dr. William R. Cubbins. He reset the arm and applied a second cast. She was hospitalized at St. Luke's Hospital in Chicago from January 22nd until January 26th, 1943. She did not return to work until March 22nd, a month after the cast had been removed.

Claimant is a woman fifty-five years of age, married, with no children under sixteen years of age dependent upon her for support. At the time of the accident, the claimant and respondent were operating under the provisions of the Workmen's Compensation Act of this State, and notice of the accident and claim for compensation were made within the time provided by the Act. The

accident arose out of and in the course of the employment.

During the year immediately preceding the injury, claimant was employed by the respondent at a salary of $63.00 per month, plus $24.00 per month maintenance, or a total of $87.00 per month. She was totally incapacitated from January 11, 1943, until March 22, 1943, a period of ten weeks. Her rate of compensation is, therefore, $10.04 per week, plus 10%, or $11.04, making a total of $110.40 due her for temporary total disability. Claimant, however, has received on account of temporary total disability the sum of $169.08, or an over-payment of $58.68.

Claim is made for a 35% permanent and complete loss of use of claimant's left arm. Claimant, testifying on her own behalf, stated that prior to the accident her left arm was perfectly normal; that since the accident, the extension of her left arm is limited; that it feels as if it were tearing out of the joint when she tries to rotate it, or when she tries to lift anything forward; that she feels a weakness, numbness, and trembling in her left hand; that the arm is painful when she bumps against it, or if she lies on her left side.

Dr. Michael I. Reiffel, of Chicago, testifying on behalf of claimant, stated that upon examination of claimant on January 5, 1944, he found a marked flattening of the deltoid group of muscles of the shoulders, a change of the carry angle of the arm from the shoulder down. He found that extension and abduction and rotation of the arm were restricted, both actively and passively; that rotation of the arm at the shoulder was restricted to approximately ninety degrees of the normal one hundred and twenty degrees; that extension of the arm at the shoulder was restricted to one hundred and sixty-five

degrees of a normal one hundred and eighty degrees; and that abduction was restricted to ninety degrees of a normal one hundred and eighty degrees. He testified that this disability was the result of the fracture of the neck of the humerus with the rotation of the shaft, and is a permanent disability. Subsequent examination by Dr. Reiffel on August 2, 1944, revealed no improvement in claimant's condition.

From the evidence, the court is of the opinion that claimant has suffered a 35% permanent partial loss of the use of her left arm. Under the provisions of the Workmen's Compensation Act, for such disability, she is entitled to receive the sum of $11.04 per week for a period of 78.75 weeks, or $869.40. This amount must be reduced by $58.68, the amount which she was overpaid for temporary total disability.

It also appears from the evidence that claimant has paid St. Luke's Hospital for necessary hospital services the sum of $44.03, and has paid Dr. William R. Cubbins for necessary medical services, the sum of $100.00. She is therefore entitled to reimbursement in the total amount of $144.03. No award, however, can be made for the services of Dr. Michael I. Reiffel, as these services were entirely unauthorized by the respondent.

Award is therefore entered in favor of the claimant in the total sum of $954.75, all of which has accrued and is payable forthwith.